to the second case set for argument, United States v. Rios, case number 20-10199. And we'll hear first from Ms. Mircheff. Yes, good morning, Your Honors. Can you hear me? Yes. Okay. Good morning, Your Honors, and may it please the Court. My name is Brianna Mircheff, and I represent Vincent Rios in this case. Your Honors, I intend to reserve about three minutes of my time, but I'll watch my own clock. The questions presented in this case is whether Mr. Rios knowingly and voluntarily entered his guilty plea. Unlike a number of cases that come before the Court asking that question, Mr. Rios does not claim that a single safeguard failed and rendered his plea not knowing and voluntary. Instead, he claims, and we believe he established in the record below, that all of the various safeguards failed at once here, that counsel wasn't doing his part to ensure that Mr. Rios understood his plea, that the Rule 11 colloquy wasn't established that either, and that the resources for identifying and assisting non-English speakers failed as well. Where all of those conditions fail, we believe the Court has no choice but to remand. I intend to focus my comments this morning on the question of Mr. Rios' English language proficiency, and then move to IAC if I have time. On the language question, we believe the Court erred in concluding that Mr. Rios' English language proficiency was sufficient to permit him to enter a plea without an interpreter. And I would point the Court to three specific factual errors that we believe are clearly erroneous in this case. The first is that the Court relied on Mr. Laguanas' testimony, Mr. Laguanas was the court interpreter, saying that Mr. Rios understood complex legal concepts when they were explained to him. Mr. Laguanas' testimony was, in fact, that Mr. Rios understood complex topics when an interpreter explained those topics to him. Given that there was no court interpreter on the scene, or in fact any interpreter on the scene, at the time Mr. Rios entered his guilty plea, or at the time he had his plea hearing, we do not believe that Mr. Laguanas' testimony supports the District Court's factual finding. In fact, we think it's quite the opposite. Second, the Court found that Mr. Rios' claims of being coached during the plea colloquy were unsubstantiated. It thus relied on the fact that Mr. Rios was able to answer questions appropriately during the Rule 11 colloquy as a basis to find that Mr. Rios' English language proficiency was sufficient. This Court has the audio file and the timestamps. We believe that factual finding is simply not correct. The third fact that we believe is clearly erroneous is the Court's reliance on its own assessment of Mr. Rios' English language abilities, saying she believed, based on their time together in court, that he spoke English fairly well. I assume this is based on the fact that Mr. Rios did not raise his hand to ask for the interpreter in court. Now, setting aside what we claim is the legal error in putting the onus on Mr. Rios to signal that he was having trouble understanding. We rely on these district court judges to make these determinations. Why isn't the assumption that the district court judge was familiar with all of the surroundings, had listened to the defendant, and had come to the conclusion that he could understand English well enough? Well, I think the primary problem with relying on that finding is, again, that the Court was basing that finding. I mean, Mr. Rios, during that hearing, did not speak except for to raise his hand three times and say some version of, I don't understand what you all are talking about here. And so in that context, the Court must have been relying on the fact that he wasn't signaling for the interpreter during the hearing when she made this assessment that Mr. Rios' language capability was sufficient. We think not only is it legal error to put the onus on the defendant to signal, to interrupt court proceedings and signal that he needs help with interpretation, but if it's ever permissible to use such a protocol, it certainly isn't permissible to persist in that protocol once the defendant has said three different times, I don't understand what's going on. And so that's why I think what makes this case somewhat different. If there was a record of him speaking a lot in court and being rather fluent, then I think the Court would have to defer to that factual finding. Here, where the factual finding is based on a legal and factual error, that is, that he didn't raise his hand and ask for help, I think the Court can't rely on that fact. So combined, we believe those three errors require this Court to remand. Now, setting aside, I guess, those three specific discrete mistakes, we think the Court was wrong to rely on such thoroughly impeachable sources of information while refusing to rely on far more probative ones. So what am I saying? The Court had before it the testimony of Mr. Laguanas, the neutral court interpreter, saying that it was his opinion Mr. Rios did not have the capability to understand complex legal concepts in English. Not only that, the Court had the reports of attorneys Toros and Gavras, both of whom not only advocated in court that they believed Mr. Rios did not have sufficient English proficiency, but acted in, you know, their representation bore that out. They asked the Court, Mr. Torres asked the Court to redo the plea colloquy because he was concerned that his client had fully understood what was going on. He said that he thought that they needed a Chamorro interpreter to attend proffer sessions. He said, you know, after this escalated, he said, I'm so concerned about this that I think my client may have mental competency issues. Right? So the Court had the interpreter. The Court had the attorney saying that there were these concerns. And instead, the Court decided to rely on the Rule 11 colloquy. Here we think the Rule 11 colloquy is problematic because not only for what appears on the face of the transcript that Mr. Rios had problems with certain questions, but also what we know was going on behind the scenes from the audio file, knowing that Mr. Rios was being coached as to the answers that he should give. Hearing on that audio file that counsel was giving him perfunctory counseling in connection with the various changes that were being made to the plea agreement. We think in that circumstance, it's problematic to rely on the Rule 11 colloquy. Well, counsel, I mean, I used to be a trial judge, and I took a lot of pleas in that context. And, you know, defense counsel has an opportunity to work with their clients before they come into that hearing. And it was common that once we get to the plea hearing, defendants would, you know, be intimidated by the surroundings, uncertain about what's happening, and look to their lawyer for confirmation of how I answer this question. Why do we assume that's coaching as opposed to just, you know, help me get through this. You know, I'm not certain about this proceeding. You want us to assume that that's sort of, I don't know if it's nefarious is the right word, but somehow that the lawyer is feeding the client answers that are convenient and maybe not true. Why should we make that assumption? Certainly, and I've been the defense counsel who is standing next to a person entering guilty pleas. It is quite common that defendants look to their counsel. It's what's uncommon here, and I think that we have the audio to conform or to corroborate this is what's particularly unusual, is that Mr. Rios wasn't taking a step back from the microphone and saying, okay, what is she asking? And the attorney saying, let me explain that to you. She's asking, did we get a copy of that information? Remember, that's the document we looked at, right? None of that was going on. That is what proper counseling is in the context of a middle of plea colloquy. What's not proper is that the defense attorney would simply say, say yes, say no, right? And it tends to corroborate what we know and I think what is even more problematic, which is Mr. Rios' unrebutted allegations that he was told before they went into court, just say yes to these questions, say yes to what the court asked. Again, the audio file that has the corroboration that his counseling to add a whole other count to the plea agreement was simply, you know, was perfunctory, that there was really no counseling going on, tends to corroborate Mr. Rios' account that his counsel was far more concerned about getting through the plea colloquy than ensuring that his client knew what was going on. When you add to that the other problems with the plea, with counsel, the fact that counsel didn't provide discovery, that counsel didn't ensure that there was language assistance, that counsel didn't ensure that the proper elements were in the plea, we think together combined those are far different from the scenario that Your Honor remembers from trial court days. Did you want to reserve? I have a minute, so I'll reserve. Yes, thank you. We'll hear from the government. May I please record Your Honor, Rosetta St. Nicholas for the United States. Your Honor, this, Your Honors, this panel should affirm the lower court's finding that the defendant's guilty plea is intelligently, knowingly, and voluntarily made. The defendant has not shown that the district court's finding that the defendant was proficient in English was clearer, affecting his substantial rights. Proficiency was fully litigated before the district court on October 2018 and November 2018. Then on October 15, 2019, after having heard the witnesses and accepting the testimony from law enforcement, so this included the recorded paytel calls, the defendant's own written statement that was written to the Guam Police Department, and reviewing this Rule 11 transcript, then the court ruled that Rios' colloquy was knowing and voluntarily given. The court also ruled that based on this evidence, he received adequate legal assistance. So the English proficiency is also shown in the 58-minute colloquy at the change of plea, where the magistrate judge addressed the defendant and found that the plea was knowing and voluntary. In fact, Rios' own counsel, Howard Trapp, declared that he explained all of the terms of the plea agreement to Rios. We would like to note that there were four other hearings. Two of those hearings, Rios was placed under oath, and he explicitly stated on the record that he understood the proceeding and discussed the charges with the counsels, and notably, the entirety of the proceedings were in English. We would note that none of Rios' attorneys, that would be Lujan, Mr. Trapp... And counsel, just to clarify, those additional hearings were before the plea was entered, or was that after the plea was entered? Before, Your Honor. Okay. So they would be when the defendant was arraigned. He was arraigned on November, there was a grand jury return, he was arraigned on December 2, 2016. He had gone through several, through attorneys, so he had gone from Dave Lujan to Attorney Mutz, and before finally ending with Howard Trapp. And so during those two hearings, he was placed under oath and he was arraigned, and he indicated that he understood the proceedings. Now, none of his attorneys ever raised the issue of this language deficiency. In fact, his own counsel, Torres, specifically stated on the record that Rios speaks and understands English, and that's in ER 297. We note that Rios had three prior felony convictions. This was not his first involvement with the law. And we also note that the interpreter did finally state that the defendant spoke English fairly well, and Torres did concede that he understood English. Again, that's SER 301. So, Your Honor, we ask that the defendant has not shown clear error affecting his substantial rights, and we ask that it be affirmed. We would note that regarding the timing of Rios' motion to withdraw the guilty plea, it occurred well after the change of plea, so that we believe that his motion to withdraw is suspect and was motivated by a different reason. He did state in his declaration to Judge Gatewood, District Court Judge Gatewood, that his intention was he needed a new plea. It also occurred on the heels of the government filing its sentencing memorandum that it intended to seek 30 years' imprisonment, which was also consistent with that of probation. So, on Friday, I believe it was July 27th, the defendant filed his document with the court. The sentencing was scheduled for the following Monday, so it was during the 11th hour. With regard to the alleged ineffectiveness of the counsel, this is a claim. We note that that was decided against Rios at the evidentiary hearing, and the court's ruling was not in error. We don't believe that this is the proper juncture to pursue the ineffective assistance of counsel claim. This should be a matter reserved for habeas. But to the extent that the issue is deemed sufficiently developed, Rios cannot prove prejudice or that but for the error he would not have pled guilty. This court can find that Rios received effective representation and consider Mr. Trapp's declaration, which was filed ER 133. The district court's finding that Rios' allegation that he never met with his attorney was contradicted by credible evidence that Rios met with Trapp before the change of plea and attended the debriefings. We note that with regard to the allegation that Mr. Trapp prompted the defendant, the district court did strike all references that Trapp prompted Rios, indicating that it was unsupported in the record. And this is where the court ruled that there were no issues with the colloquy and the plea would not be withdrawn. We would note that although Rios claims that he never saw any discovery, Torres did concede that Rios did receive discovery. It was in the form of photographs. That is on ER 193, which is contrary to Rios' claim that he never saw discovery. And of course, regarding the ineffective assistance claim, this court certainly can review the Rule 11 colloquy and they can listen and hear Rios' solemn declarations made in open court. We believe that the court's findings were not clear error. We ask that Rios' declarations made in open court under oath be credited over his subsequent testimony, which was one year and four months after the change of plea, in light of the fact that Rios knew what his likely sentence was at the time. I would like to make a comment regarding the allegation about the ward of the court issue. We would note that the counsel's illness occurred one year and seven months after the change of plea, after Mr. Trapp submitted his declaration to the court. The government contends that his counsel negotiated a plea correctly. It was a critical phase of the litigation and he was not deprived of effective assistance of counsel, pursuant to the Sixth Amendment. We would note that a later disability did not affect Rios' representation. We would also note that the disability is medical and that the guardianship is temporary. Those are in ER 582. So we just would like to emphasize that any medical issues occurred a year and seven months after the change of plea, and we contend that reasonably effective assistance was provided, and Rios cannot show that his legal representation was so inadequate to deny him the Sixth Amendment right to counsel. With regard to the discovery claim as one of the grounds for ineffective assistance, again, Mr. Torrey conceded that Rios did see photos of the house, pictures from the post office. And with regard to the Strickland standard, reasonably effective assistance, it is not unreasonable for a defense attorney to protect a cooperating defendant from having his recorded conversations, search warrants, shared with fellow inmates at a closed jail facility. That would be reasonably effective assistance. So it's simply not unreasonable to withhold documents to an inmate because there are elements of danger. We know that this is a plea agreement that contains 5K1.1 provisions. Your Honor, the last point we'd like to make is regarding the weight and quantity of the drugs. We do concede that the defendant was not advised that the government must prove the drug quantity beyond a reasonable doubt. We do cite to Minori, which holds that nevertheless, under the Ilana fourth prong, error did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings. And we ask for an outcome, we ask the court to adopt Minori's reasoning that the public perception of the judicial system is unaffected, and that is given the quantities. The defendant was placed on notice that there was 8,491 grams of methamphetamine, 18 pounds of methamphetamine. And so we believe that the fairness, integrity, and public reputation of the judicial proceedings is unaffected. In fact, it's more compelling in Rios' case than Minori. This was a fraction of the methamphetamine that was given notice to the defendant, so there was no notice as to in excess of 50 grams. 50 grams is a fraction, or 0.005% of the defendant's 8,491 grams of methamphetamine. Your Honor, if there are no questions, we submit on the brief. Thank you, counsel. We'll hear rebuttal then. Thank you. I'll just try to hit a couple of points here. So I hear Ms. Zendikla saying that it's not unreasonable to not provide discovery to cooperators. Mr. Rios isn't the first cooperator to come through a jail, and there's processes for these things. If the facility has the ability to safeguard the material separately, if not, then it's incumbent on defense counsel to sit with their client and go through the discovery with them. The fact that Mr. Rios was a cooperator doesn't mean that Mr. Rios doesn't have the right to see his discovery. Ms. Zendikla's brought up the question of delay, the fact that it was only three days before sentencing when Mr. Rios filed his pro se motion to withdraw. As we said in the brief, I don't think you can take the same facts as you can from cases like Nostradus. In this case, Mr. Rios was three days before sentencing, and his attorney hadn't yet filed any sort of sentencing position paper, hadn't responded to the PSR at all. Under those facts, we simply believe that Mr. Rios waited as long as he could, hoping that his attorney would help him through that process, and when his attorney had clearly abandoned him, he filed that motion. I see my time is real short. I'm just going to make one more quick point, and that is that it simply isn't true that none of Mr. Rios' attorneys were raising concerns about his English language ability. Mr. Torres said on several occasions he was very concerned about Mr. Rios' language ability. He said he thought the plea colloquy should happen again. He thought they needed a Chamorro interpreter for proffers, and Mr. Gavras himself said, please put this hearing off because I need time. I can't talk to him about any sort of legal concept in English. He didn't seem to have any trouble with the English language on that jailhouse phone call that was recorded. He knew about the pre-sentence report. He has a little different name for it. He calculates the statute of limitations correctly five years under the U.S. Code, and he also talks about what it means to violate parole or conditions of special release. What do we make of that? I think there's two points there, really. The first is that that occurred two and a half years after the plea colloquy, which means that it reflected his – So was English getting better in the interim? I think that if you sit in prison for two and a half years with primarily English-speaking individuals who are spending all day talking about the case, you would tend to improve your ability to understand some legal concepts. But I think more important than that is the fact that though he uses certain legal terms, legal jargon, none of it is used correctly, and in fact, he doesn't understand a whole lot of concepts, right? The statute of limitations is not running against a person who's already been charged and pled guilty. The PSR doesn't give you any amount of time at all. It can't give you 10 years. The plea agreement would not promise a certain sentence, and it certainly wouldn't do so in advance of the cooperation. So while it demonstrates a certain ability to throw around legal terms, I think it actually proves that Mr. Rios had very little comprehension of what those legal terms actually meant and how the federal criminal justice system worked. Okay, thank you, counsel. Thank you to both counsels for your arguments in this case. The case is now submitted, and we'll move on.
judges: HAWKINS, NELSON, FORREST